# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF IDAHO

---

| | |
|---|---|
| In Re: | |
| Lori J. Grimmett, | **Bankruptcy Case No. 16-01094-JDP** |
| Debtor. | |

---

## MEMORANDUM OF DECISION

---

**Appearances:**

Nolan Roy Sorensen, CAPSTONE LAW[1], Meridian, Idaho, Attorney for Debtor.

Mary P. Kimmel, Boise, Idaho, Attorney for the United States Trustee.

Noah G. Hillen, Boise, Idaho, Chapter 7 Trustee.

### *Introduction*

This decision is about a chapter 7 [2] debtor's law firm which, in its

---

[1] Capstone Law, LLC was known as Weekes Law, PLLC at the time Debtor filed her bankruptcy petition.

[2] Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101 – 1532, all rule references are to the Federal Rules of Bankruptcy Procedure, Rules 1001 – 9037.

MEMORANDUM OF DECISION – 1

zeal to ensure it was paid in full by the debtor for its services, potentially

impaired its client's ability to obtain effective relief through the bankruptcy

filing.  As will be explained, the lawyers' strategy and actions likely

violated a variety of bankruptcy laws and ethical rules and, ultimately, was

counterproductive for all concerned.

### *Procedural Background and Facts[3]*

The Court understands that these material facts are undisputed.

On July 27, 2016, Lori J. Grimmett ("Debtor") entered into a

"Chapter 7 Retainer Agreement & Promissory Note" ("the Agreement")

with the Weekes Law firm to serve as her attorneys in a chapter 7

bankruptcy case.  Ex. 210.  The  petition commencing Debtor's case was

filed on August 24, 2016; it was signed by Nolan Sorensen, an attorney at

Weekes Law (collectively "Counsel").  Exs. 200, 201.

At that time, only Debtor's petition was filed; none of the schedules,

Statement of Financial Affairs, statement of current monthly income, or

---

[3] This Memorandum constitutes the Court's findings and conclusions,
and disposes of the Motion.  Rules 7052; 9014.

MEMORANDUM OF DECISION – 2

other required documents were filed.  Along with the petition, Debtor also

filed an application to pay the case filing fee in two installments.  The

application, prepared by Counsel, was promptly granted by the Court.

Exs. 203, 205.  While no reason is apparent for the delay, on September 7,

2016, Counsel filed Debtor's remaining schedules and documents, along

with Counsel's Rule 2016(b) disclosure of compensation.  Dkt. Nos. 16-20.

On September 23, 2016, Counsel paid the first filing fee installment.  Dkt.

No. 21.

In the weeks that followed, Debtor fell behind in her payments to

Counsel under the Agreement.  Presumably to motivate her to pay up,

Counsel sent her emails and a letter, and left telephone messages for

Debtor demanding payment, which collectively threatened dire

consequences would befall Debtor in the event her account with Counsel

was not brought current.  Exs. 210, 213.  Debtor received each of these

communications.

On October 28, 2016, after visiting with and receiving advice from

an attorney-friend in Arizona, Debtor sent the Court a letter regarding her

MEMORANDUM OF DECISION – 3

predicament, describing Counsel's actions to collect its fees, and alleging

that Counsel was subjecting her to harassment and threats of dismissal of

the bankruptcy case for her non-payment of its attorney fees. Exs. 210,

214. The Court received and docketed the letter in Debtor's bankruptcy

case on November 7, 2016. Dkt. No. 25.

Others apparently read Debtor's letter, because on November 16,

2016, the United States Trustee ("UST") filed a "Motion for Entry of an

Order Cancelling Agreements and Directing Weekes Law, PLLC and

Nolan Sorensen to Return Fees" ("the Motion"). Dkt. No. 26. The Motion

asked the Court to condemn Counsel's conduct and to, effectively,

disallow all of Counsel's fees earned in Debtor's case.

On November 21, Counsel filed an amended Rule 2016(b) disclosure

of compensation. Dkt. No 28. On December 16, Debtor paid the second

and final filing fee installment. The Court entered a discharge in Debtor's

favor on January 6, 2017. Dkt. No 39.

On December 20, 2016, Counsel objected to the Motion, arguing that

Counsel had engaged in no inappropriate acts concerning Debtor's case,

MEMORANDUM OF DECISION – 4

and urging the Court to deny the Motion. Dkt. No. 29. On March 3, 2017,

Counsel filed a brief in opposition to the Motion. Dkt. No. 49. The Court

conducted an evidentiary hearing concerning the Motion on March 8,

2017, at which Mr. Sorensen testified. The issues raised by the Motion

were taken under advisement by the Court. Dkt. No. 51.

### *Analysis and Disposition*

A.   The Agreement

Debtor attached a copy of the Agreement that Counsel required her

to sign to her letter to the Court. Ex. 210.[4] The Agreement is a form,[5] is

fraught with typos and random capitalization, and purports to divide the

services Counsel agreed to perform for Debtor for the bankruptcy filing

into two categories: pre- and post-petition. In apportioning the services,

---

[4]   Counsel's signature does not appear on that copy, but he does not dispute that it is an accurate version of the original contract signed by the parties.

[5]   No evidence was offered to show that the terms of the Agreement were in any fashion "negotiated" by Counsel and Debtor. As the Court understands Counsel's approach, if a debtor-client wants to engage Counsel's bankruptcy services, the client must either pay all fees in cash "up front", or the client is asked to sign the Agreement, an arrangement marketed by Counsel in the Agreement as the "Affordable Bankruptcy Program".

MEMORANDUM OF DECISION – 5

the Agreement states that:

> The Pre-petition Services include: (a) an Initial consultation
> with an attorney; (b) Analysis of your financial situation and
> exemption planning; (c) reviewing the questionnaires and
> documents provided by You in anticipation of preparing your
> case; (d) preparation and filing of a bare-bones petition,
> Statement of Social Security number, Certificate of Credit
> Counseling, & application to pay the court's filing fee in
> installments.  The Pre-petition Services do not cover all the
> paperwork or filings to complete a bankruptcy case.
>
> The Post-petition services include: (e) preparing and filing
> your bankruptcy Schedules, & Statement of Affairs, and
> related bankruptcy papers (e) [sic] providing Your bank
> statements, pay advises and tax returns to the trustee; (f)
> representing you at the 341 meeting of creditors ("341
> Meeting"); and (g) communicating with you in regards to
> court and/or trustee directives.  Reaffirmation agreements,
> adversary actions and contested motions are not included in
> the Pre-petition Services or the Post-petition Services.  This
> exclusion includes but is not limited [sic], motions to turn over
> property, motions for relief of stay, and adversary
> proceedings.

Ex. 210 at ¶ 1.

For Counsel's fees, the Agreement committed Debtor to pay $500 to

Counsel before the petition was filed for the pre-petition services.  Debtor

was then charged $1,500 for Counsel's post-petition services, payable in

MEMORANDUM OF DECISION – 6

monthly installments after the petition was filed, with full payment due to

Counsel within twelve months.  *Id.* at ¶ 3.  The Agreement explained that

"estimated Costs for the court filing fee, credit counseling and debtor

education courses are included in the Fee."  *Id*.

Important, here, are those terms of the Agreement evidently

designed to encourage Debtor to pay the full amount due for fees.  The

Agreement provided that Debtor's "failure to make timely payments

hereunder may result in your filing fee not being paid to the court and

may result in a dismissal without a discharge, we will seek court approval

to withdrawal [sic] as counsel, and a collection action being brought

against you."  *Id*. at ¶ 7.  Along with the Agreement, at Counsel's request,

presumably to facilitate her post-bankruptcy payments to Counsel, Debtor

was required to execute a "Fee Check Draft Authorization" and a "Third-

Party Disclosure and Consent."  *Id*.  The former allowed Counsel to draft

funds from Debtor's debit card without further notice to, or consent by,

Debtor, while the latter provided Debtor's consent for a company known

as "BK Billing" to collect fees from Debtor pursuant to a factoring loan

MEMORANDUM OF DECISION – 7

agreement that company apparently had with Counsel.[6]

B.      Counsel's Post-Bankruptcy Actions

As noted above, following the bankruptcy filing, Debtor fell behind

on the payments she promised to make to Counsel under the Agreement.

Her letter to the Court indicated that, as a result, Counsel's agents

contacted her three or four times per week about her delinquent account.

Ex. 210. She attached copies of some of the emails and letters she received

from Counsel to her letter to the Court. *Id*.; *see also* Ex. 213.[7] One email

from Counsel to Debtor, dated October 28, 2016, in pertinent part,

reiterates the consequences if Debtor failed to pay Counsel as agreed:

> [your] failure to timely make your monthly [Affordable
> Bankruptcy Program] payment [to Counsel] can have serious
> consequences, including, without limitation: (1) dismissal of
> your case; (2) default interest; and (3) collections . . . . We
> would prefer to resolve this issue before taking such drastic

---

[6] No evidence was offered to show that Counsel ever assigned Debtor's account to a factoring company.

[7] Indeed, the same email was sent to Debtor on September 15th, 19th, and 21st, as well as on October 18, 2016. Ex. 213. The use of this form email suggests to the Court that this practice was Counsel's standard course of business in dealing with its bankruptcy clients.

MEMORANDUM OF DECISION – 8

actions against you.

*Id*.  In a letter[8] Debtor received, Counsel lamented that it had "made

numerous unsuccessful attempts to contact you regarding your monthly

payments . . . ."  *Id*.  The letter demanded that Debtor bring her account

with Counsel current within fourteen days, and warned Debtor of the

impending "drastic actions" that would result from her failure to pay up:

> If you fail to resolve this issue within this time period we will
> withdraw from your case and referring [sic] the outstanding
> balance for collection, including without limitation, seeking a
> garnishment from you.  As you know from our prior
> communications, if we withdraw from your case and you fail
> to complete any remaining issues in your case, your case may
> be dismissed and you will have to start all over – even if the
> discharge has already been granted.
>
> We would prefer to resolve this issue before taking such
> drastic actions against you.

*Id*.[9]

---

[8]  The letter is dated September 17, 2015.  *Id*.  The Court surmises the
correct date should have been September 17, 2016.

[9]  Since the Court generally does not enter discharge until a debtor has
made all necessary filings, attended a § 341(a) meeting, completed the required
post-bankruptcy financial management course, and otherwise cooperated with
the administration of her bankruptcy case, the Court is disturbed that Counsel

MEMORANDUM OF DECISION – 9

C.      The UST's Motion and Counsel's Opposition

After Debtor shared her concerns with the Court, the UST filed the

Motion.  In it, the UST alleged that Counsel engaged in a variety of

improper, and in some instances, unethical actions in this case in its

dealings with Debtor.  As a remedy for these transgressions, the UST

asked the Court to order Counsel to disgorge all compensation received

from Debtor,[10] or in the alternative, that amount which the Court finds

exceeds the value of Counsel's services.  The UST also asked the Court to

cancel the Agreement, including the promissory note, check draft

authorization, and third party disclosure and consent, rendering them

unenforceable against Debtor.

Counsel filed an opposition and brief in response to the Motion.

Dkt. Nos. 29, 49.  In its brief, Counsel relies on the case of *Gordon v. Hines*

---

suggests to a client that its withdrawal at that stage of a case may require a
debtor to "start all over".  That Counsel would make such a potentially
misleading statement to a debtor-client infers that its motive was purely
pecuniary.

[10]  The UST acknowledges that Counsel should not be ordered to disgorge
any amounts it received from Debtor which it used to pay her case filing fees.

MEMORANDUM OF DECISION – 10

*(In re Hines)*, 147 F.3d 1185 (9th Cir. 1998), to support its position that post-petition attorneys fees arising under a pre-petition fee agreement are not discharged because the claim for the fees does not arise until the services are performed.  Counsel also disputes the UST's allegations that it used abusive collection tactics.  Counsel further contends that the Court may not order disgorgement of its fees under § 329(b) because its fee was reasonable.  Counsel also contends that it did not improperly unbundle its services, and that its fee disclosures in the case were accurate.

Furthermore, Counsel argues that it did not violate the Court's order regarding filing fee installments, and its use of electronic signatures was proper.  Finally, Counsel asserts that its fees and the Agreement are not subject to the automatic stay and that Debtor's obligation to pay fees was not discharged, so that its attempts to collects its fees from Debtor were not restricted in any way by the Code.

D.    <u>Analysis</u>

1.    *Attorney Fees and Bankruptcy*

As the Court often acknowledges, representing a chapter 7 debtor

MEMORANDUM OF DECISION – 11

can be a challenging undertaking for an attorney.  Getting paid for services

can be a chore for the attorney because, by definition, a debtor-client

usually suffers from a variety of financial difficulties, and as a practical

matter, is frequently unable to pay the attorney in full in advance of filing

for bankruptcy relief.

In addition to practical problems, ethical rules restrict an attorney's

options in dealing with debtor-clients concerning fees.  Moreover, the

Bankruptcy Code and applicable rules can also in some measure

complicate the attorney's efforts to get paid.  For example, under the Code,

if a debtor and her counsel enter into a representation agreement allowing

the debtor to make fee payments following the petition filing, and if the

debtor is unable or unwilling to comply, then the attorney runs the risk

that he or she will be prohibited from collecting from the debtor during the

bankruptcy case by virtue of the automatic stay found in § 362(a)(6).  There

is also the possibility that the debtor's payment obligation under a

prebankruptcy fee contract will be discharged under § 727(b), and that the

attorney will be restrained from collecting from the debtor after

MEMORANDUM OF DECISION – 12

bankruptcy by the discharge injunction in § 524(a).

Preferring the obvious, and perhaps most prudent, response to these challenges, many attorneys ask debtor-clients to pay their fees in full before the bankruptcy case is filed.  But because many debtors simply can not pay in full up front, if an attorney wants an active bankruptcy practice, the lawyer must hope to get paid for services after the case is filed.  The Court supposes that sometimes this decision works out fine for the lawyer; other times, not so much.[11]

Counsel's approach in this case represents one strategy to deal with the problems inherent in that event.  Here, Debtor was required to sign a representation agreement that purports to split the attorney's services into "pre-petition" and "post-petition" tasks so that, in theory at least, Debtor's obligation to pay Counsel after the bankruptcy was filed is not subject to

---

[11]  The Court's exposure to the different fee agreements used by debtors' attorneys is premised upon the rules requiring disclosure of such agreements in filings with the Court, and its frequent opportunity, indeed duty, to review the terms of those arrangements in bankruptcy cases.  Decades of experience with thousands of cases inform the Court that market forces likely play a strong role in a lawyer's decision to, as a matter of practice, agree to "finance" some or all of a debtor-client's fees.

MEMORANDUM OF DECISION – 13

the automatic stay or discharge.  Because it was designed by Counsel

precisely to avoid many of the debtor-protections of the Code, such an

agreement warrants scrutiny by the Court.

Here, Counsel agreed to provide Debtor those services necessary to

start her bankruptcy case, for which Counsel was paid in advance.

However, under the Agreement, Counsel was obligated to provide the

other necessary services for Debtor to obtain full bankruptcy relief only if

she paid Counsel.  In other words, under the Agreement, Counsel

attempts to effectively "unbundle" the essential legal services to be

provided to Debtor.  This tactic raises ethical issues for Counsel because,

even if unbundling is ethically allowed in some circumstances, extreme

care must be taken by the lawyer to ensure that the representation

agreement strictly complies with the Bankruptcy Code's provisions,

applicable rules, and case law governing attorney practices and conduct in

bankruptcy cases.

2.   *Unbundling of Services*

While the Court is mindful of the benefits associated with a debtor's

MEMORANDUM OF DECISION – 14

ability to retain competent professional help in bankruptcy cases, the

Court is not at liberty to excuse an attorney's compliance with the ethical

canons, nor to rewrite the Code and Rules, in order to ease the financial

burden on debtors' lawyers.  As explained below, Counsel's attempts to

navigate this difficult landscape in this case were misguided and

ineffective.

Here, the structure of the parties' fee contract gives rise to some of

the concerns voiced by the UST.  The Agreement commits Counsel to

perform almost all[12] of the services Debtor needed to obtain effective relief

in her bankruptcy case.  However, the Agreement grants Counsel the

contractual right to withdraw from representation of Debtor, and to

perform no further services, if she fails to pay Counsel.  The UST is

concerned about whether Counsel obtained Debtor's informed consent

regarding Counsel's proposal to effectively unbundle its services.

---

[12] The Agreement specifies that Counsel's services concerning
reaffirmation agreements, as well as for representing Debtor on contested
motions, including motions to turnover property and for relief from the stay, are
not included in the post-petition fee and will be separately billed.  As discussed
below, this type of limitation on Counsel's services may be problematic.

MEMORANDUM OF DECISION – 15

On this record, the Court cannot be sure that Counsel's use of the

Agreement satisfies its ethical obligations.  The Idaho Rules of Professional

Conduct apply to attorneys practicing before this Court.  L.B.R. 9010.1(g)

(providing that the "members of the bar of this court shall adhere to the

Rules of Professional Conduct ("IRPC") promulgated and adopted by the

Supreme Court of the State of Idaho.").  The IRPCs do not prohibit

unbundling of services; indeed, they expressly allow a lawyer to "limit the

scope of the representation" but only "if the limitation is reasonable under

the circumstances and the client gives informed consent."  IRPC 1.2(c).

The Court is skeptical, but ultimately uncertain, whether in this case

the terms of the Agreement allowing Counsel to withdraw from

representing Debtor if she does not make post-petition payments would be

"reasonable under the circumstances" under the Idaho lawyer ethics rules.

In addition, there is no evidence in the record concerning whether Counsel

obtained Debtor's "informed consent" to potentially unbundle its services,

other than through her signature on the Agreement.  Whether Debtor in

this case, or most any debtor, for that matter, understands and appreciates

MEMORANDUM OF DECISION – 16

the adverse consequences that might befall her in allowing her lawyer to abandon her "mid-bankruptcy" is a question of fact.  While the Court is doubtful that any facts in this case rendered these provisions in the Agreement "reasonable", or whether Debtor comprehended the risks associated with this term, the Court declines to render any sort of definitive judgment concerning the UST's criticisms of the Agreement regarding Counsel's obligation to obtain Debtor's informed consent.

On the other hand, the record is more than adequate to allow the Court to conclude that the Agreement was inconsistent with Counsel's obligation to represent a debtor-client as a matter of bankruptcy law.  In this regard, Chief Judge Myers has thoughtfully considered the unbundling issue, and the debtors' lawyers' duties, in bankruptcy in *In re Castorena*, 270 B.R. 504 (Bankr. D. Idaho 2001).  In that decision, the Court cautioned that:

> [a]n attorney, in accepting an engagement to represent a debtor in a bankruptcy case, will find it exceedingly difficult to show that he properly contracts away any of the fundamental and core obligations such an engagement necessarily imposes.  Proving competent, intelligent, informed

MEMORANDUM OF DECISION – 17

> and knowing consent of the debtor to waive or limit such
> services inherent to the engagement will be required.

*Id*. at 530.  Moreover, the Court continued:

> Furthermore, for clarity, when accepting an engagement to
> represent a debtor in relation to a bankruptcy proceeding, an
> attorney must be prepared to assist that debtor though the
> normal, ordinary and fundamental aspects of the process.
> These include the proper filing of all required schedules,
> statements and disclosures; preparation and filing of
> necessary amendments to the same; attendance at the § 341
> meeting; turnover of assets to the trustee, and cooperation
> with the trustee; compliance with the tax turnover and other
> orders of the Court; performance of the duties imposed by
> § 521[a](1), (3) and (4); counseling in regard to § 521[a](2) and
> the reaffirmation, redemption, surrender or retention of
> consumer goods securing obligations to creditors, and
> assisting the debtor in accomplishing those aims; and
> responding to issues that arise in the basic milieu of the
> bankruptcy case, such as violations of stay and stay relief
> requests, objections to exemptions and avoidance of liens
> impairing exemptions, and the like.

*Id*.

Here, under the Agreement, many the of the "fundamental aspects"

of Counsel's services for Debtor described in *Castorena* would constitute

"post-petition" services, and therefore, be subject to the separate, post-

bankruptcy fee.  Under the Agreement, because Debtor failed to make

MEMORANDUM OF DECISION – 18

payments following the filing, Counsel could have terminated the

representation and withheld such critical services from Debtor as

preparing and filing her schedules and statements, turning over financial

papers to Trustee, representing Debtor at the § 341 meeting of creditors, or

even communicating with Debtor about directives from the Court or

Trustee.  Were that not troublesome enough, the Agreement further

provides that Counsel's services for helping her with reaffirmation

agreements, for representing her on contested motions – such as motions

to turnover property and for relief from the stay, are not included in the

services covered by the post-petition fee, and presumably, would be

separately billed.[13]

As *Castorena* noted, "[i]f either lawyer or client wishes to limit

services in order to preserve a lower fee, that limitation must be carefully

considered and narrowly crafted, and be the result of educated and

---

[13] This attempted limitation on Counsel's services is also acknowledged in its Rule 2016(b) disclosure statement wherein Counsel specifies that any fees for services to represent Debtor concerning reaffirmation agreements and stay relief actions are not included in its base fee.  Dkt. No. 18.

MEMORANDUM OF DECISION – 19

informed consent."  *Id*. at 531.  The terms of the Agreement violate both

the letter and spirit of *Castorena*.  As the Court explained in that decision,

when Counsel accepted the engagement to represent Debtor in a

bankruptcy case, Counsel committed to provide her certain "core services"

and to represent her in all of the fundamental aspects of the bankruptcy

case.  Under the applicable bankruptcy law discussed in *Castorena*, because

Counsel agreed to act as Debtor's attorney in the bankruptcy case, Counsel

could not limit its inherent obligations by declining to represent Debtor if

she failed to pay her legal bill.[14]

In sum, Counsel's attempt to circumvent its duties to provide

Debtor adequate representation absent timely payment was ineffective.

---

[14]  Of course, if Counsel intended to terminate its representation of Debtor, it must have permission of the Court to do so.  *See* L.B.R. 9010.1(g)(2) (providing that "[n]o attorney of record for a party may withdraw from representation without leave of the court, upon notice to the client, all parties in interest, and notice and hearing.")  The Court can confidently predict that Counsel would be unsuccessful in persuading it to approve withdrawal under these circumstances.  Moreover, the Court presumes that Counsel likely appreciated it would be unable to secure permission to withdraw based solely upon Debtor's failure to pay fees.  Under these circumstances, the Court assumes that Counsel's inclusion of that option in the Agreement was intended solely to serve as leverage in Counsel's efforts to get paid.

MEMORANDUM OF DECISION – 20

And its practice of asking clients like Debtor to do so via a representation

agreement, especially with no showing that Debtor was capable of

representing herself, or that she had given her fully informed consent to

such an arrangement, was improper.  Here, Counsel's strategy constitutes

adequate grounds to require Counsel to disgorge all fees paid, and for

cancellation of Counsel's entitlement to any future fees under the

Agreement.  *Id*. at 532.

      3.    *Counsel's Post-Petition Actions to Collect Fees*

Even if Counsel's efforts to apportion its services – and Debtor's fee

payment obligations – under the Agreement between "pre- and post-

petition" does not raise "unbundling" issues, either ethically or under

*Castorena,* a separate question presented in this case is whether Counsel

may enforce the Agreement against Debtor post-bankruptcy.  The UST

contends that Counsel's actions to collect the unpaid post-petition fees

would be prohibited under both the automatic stay and the discharge

injunction, citing the Ninth Circuit's decision in *In re Hines*.  Counsel

disagrees and interprets the impact of *Hines* in this case differently.

MEMORANDUM OF DECISION – 21

As binding authority, it will help to describe the facts and holding of *Hines*. There, the debtor retained attorney Shilberg to represent her in a chapter 13 case. About a year after the case was commenced, the debtor decided to change to a different attorney, Gordon, who then helped her convert her chapter 13 case to one under chapter 7. Having no funds to pay Gordon, she entered into a fee agreement with him which required her to execute a promissory note and give him seven postdated checks. This arrangement effectively permitted Gordon to collect his fees from the debtor in installments. Gordon disclosed his fee arrangement to the bankruptcy court. Later, after the conversion, he cashed two of the debtor's postdated checks.

For reasons unimportant here, at that point, the debtor decided to revert to Shilberg as her bankruptcy counsel. Shilberg informed the debtor that any obligations under her fee agreement with Gordon were discharged in the chapter 7 case. At his suggestion, the debtor stopped payment on the remaining postdated, uncashed checks she had given Gordon. In response, Gordon tried to collect from the debtor by sending

MEMORANDUM OF DECISION – 22

her a "past due" notice, leaving a phone message for her, and telling the

debtor over the phone that she must settle her account with him.

Through Shilberg, the debtor filed a motion asking the bankruptcy

court to find Gordon in contempt, alleging he had violated the automatic

stay in attempting to collect from her.  While the bankruptcy court denied

the contempt motion, it reduced Gordon's fee as the debtor's attorney to

the amount of the two checks he had already cashed.  The debtor

appealed, and the Bankruptcy Appellate Panel concluded that Gordon had

indeed violated the automatic stay by attempting to collect his fees from

the debtor; it remanded the matter to the bankruptcy court to determine

the amount of debtor's damages under § 362(h).

Gordon appealed to the Ninth Circuit.  The debtor argued that

Gordon's presentment of the postdated checks, and sending of the notice

of dishonor, were impermissible attempts to collect on a pre-petition claim

in violation of § 362(a)(6).  In response, Gordon contended that the

postdated checks that debtor executed created a new, post-conversion

claim in his favor, and thus, his collection of that claim would not violate

MEMORANDUM OF DECISION – 23

the automatic stay.

The Ninth Circuit assumed that Gordon was not seeking to recover the fees for his pre-conversion work, as those fees had already been collected and paid when he cashed the two postdated checks.  In doing so, the court acknowledged the impact of another Ninth Circuit decision wherein the court held that "the debts at issue [in that case] – debts arising from the provision of pre-petition legal services – are dischargeable in a bankruptcy proceeding [under Section 727]."  *Id*. at 1188 (quoting *Hessinger & Assocs. v. U.S. Trustee (In re Biggar)*, 110 F.3d 685, 688 (9th Cir. 1997) [noting that a "plain reading of the discharge provisions is that there is no exception for debts arising from pre-petition attorneys' fees."]).  In other words, had Gordon sought to collect for his pre-conversion services, he would have violated the automatic stay.  *In re Hines*, 147 F.3d at 1188.

As applicable here, the holding in *Hines* does not mean that the debt arising from Counsel's pre-petition legal services is dischargeable, as the court had already established that precedent via *Biggar*.  The issue in *Hines*, as framed by the court, was "whether the postpetition rendition of legal

MEMORANDUM OF DECISION – 24

services bargained for pursuant to a prefiling fee agreement entitles

Gordon to recover the fees for those later services, not from the

bankruptcy estate . . . but directly from Hines herself." *Id*. at 1189.  The

Ninth Circuit decided that "claims for lawyers' compensation stemming

from such postpetition services actually provided to the debtor really do

not fall within the automatic stay provisions of Section 362(a)(6) or the

discharge provisions of Section 727." *Id*. at 1191.  The court took two

distinct paths in reaching that conclusion.

First, the court reasoned that because § 362(a)(6) prohibits actions

"to recover a claim against the debtor that arose before the commencement

of the case," the panel concluded that Gordon's actions fell outside the

protections of the automatic stay.  While the agreement between Gordon

and Hines to perform certain services was entered into before the

bankruptcy case was converted, the Ninth Circuit reasoned that Gordon

would be entitled to collect fees only if and when he actually performed

those services.  As a result, the court observed that "it strains that statutory

language a good deal to characterize the attorney as having violated the

MEMORANDUM OF DECISION – 25

Section 362(a)(6) automatic stay by seeking payment once the postpetition

services have thereafter been performed." *Id*. at 1191.  In other words,

because Gordon's "claim" could not exist until he actually provided the

post-conversion services, § 362(a)(b) did not stay his efforts to collect those

fees.

The second basis for the court's decision was an equitable one.  It

held that, at the time Hines fired Gordon as her counsel, he had "an

undischarged claim for any fees earned by him in excess of" the funds he

had already collected via the cashing of postdated checks.  *Id*.  Gordon

could not look to the pre-petition fee agreement to enforce payment

because he had not provided all of the agreed services.  But even if Hines'

contractual obligation to pay him was discharged in the bankruptcy case,

Gordon could nonetheless recover for the services he provided to Hines

after conversion via the equitable remedy of quantum meruit.  *Id*.[15]

---

[15] "The doctrine of quantum meruit permits recovery, on the basis of an implied promise to pay, of the reasonable value of the services rendered or the materials provided." *Bakker v. Thunder Spring-Wareham, LLC*, 108 P.3d 332, 338 (Idaho 2004).

MEMORANDUM OF DECISION – 26

In this case, Counsel points out that Gordon's quantum meruit claim discussed in *Hines* arose because Gordon was terminated before completing all of the required services, and therefore, and because of the bankruptcy, he no longer had a contract with the debtor. Thus, according to Counsel, *Hines* is distinguishable here because Counsel completed its services for Debtor. Counsel further reads *Hines* to permit an attorney to enter into a single agreement for both pre- and post-petition services, and that Debtor's obligations to pay Counsel would not be subject to discharge. Because of this, according to Counsel, it need not rely on quantum meruit in this case.

The Court disagrees. The Agreement was executed before Debtor's bankruptcy case was filed. As a result, Debtor's obligation to pay him under the Agreement was discharged in bankruptcy, period, and Counsel cannot enforce that contract obligation post-petition. To get paid for any post-bankruptcy services it provided, Counsel must invoke quantum meruit. While *Hines* is a case about the scope of the automatic stay, it also reinforced the holding in *Biggar* that a lawyer cannot collect for pre-

MEMORANDUM OF DECISION – 27

petition legal services because that obligation is discharged.  Here, Counsel

likewise may not rely on his pre-petition fee agreement to collect for fees

incurred post-petition.  Counsel must instead seek payment for post-

petition services based solely upon equity.

Thus, in this case, Counsel's argument that, in *Hines*, the quantum

meruit claim only arose because Gordon was discharged before

completing the services bargained for is not necessarily correct.  Gordon

and Hines had agreed he would perform services post-petition, he

provided them, and he was thus equitably entitled to payment even if the

contract obligation had been discharged.  When, or if, Gordon was fired is

not the point.  He performed post-petition services, was not paid for them,

so quantum meruit provides a basis for him to achieve payment.

And so it is for Counsel here.  According to Counsel's own

disclosures, it received only a portion of its fees from Debtor pre-petition,

and it intended to collect the remaining fees owed to Counsel under the

Agreement post-petition.  According to the case law, if Debtor owed any

fees to Counsel for pre-petition services, that debt was discharged, and any

MEMORANDUM OF DECISION – 28

unpaid fees for post-petition services can be recovered solely by satisfying

a quantum meruit analysis.

Counsel offered insufficient evidence to identify and establish the

value of the services it provided to Debtor after the filing of the

bankruptcy, and the Court declines to presume those services were worth

the amount Counsel was attempting to collect.  Absent such proof,

Counsel has not established that it was entitled to payment of any fees

beyond those already collected from Debtor.  And if Counsel was

attempting to collect fees for pre-petition services, Debtor's obligation to

pay him was discharged, and Counsel likely violated the automatic stay in

pursuing collection from Debtor.

### 4.   *Conflicts of Interest*

The UST contends that the Agreement created a conflict of interest

between Counsel and Debtor because it inappropriately conveyed the false

impression that Counsel could withdraw from representation of Debtor in

the bankruptcy case  at any time contrary to the Local Bankruptcy Rules.

The UST aptly notes that, under L.B.R. 9010.1(g)(2), permission from the

MEMORANDUM OF DECISION – 29

Court is required in order for Counsel to withdraw as Debtor's attorney.

Moreover, the UST contends that Counsel did not advise Debtor about the

potential that her obligation to pay its fees may be subject to discharge in

the bankruptcy case.  Finally, the UST argues that because the Agreement

permits Counsel to withhold representation until fee payments are made,

an impermissible conflict of interest arises.

While Counsel disputes it, the UST is correct in all respects.  Simply

put, here, Counsel's use of the Agreement created irreconcilable conflicts

of interest with Debtor as its client, particularly via its threats to terminate

representation of Debtor in the bankruptcy case, as well as through the

coercive collection procedures outlined in the Agreement and evidenced in

its communications with Debtor.  The Court therefore deems the

compensation paid to Counsel in this case excessive under § 329(b), and

Counsel will be prohibited from collecting fees.  *See In re Basham*, 208 B.R.

926, 932 (9th Cir. BAP 1997) (the record "supports the bankruptcy court's

finding that the fees were unreasonable given the . . . failure to provide

competent and complete representation of the [debtors])  (citing *In re*

MEMORANDUM OF DECISION – 30

*Martin*, 197 B.R. 120, 126 (Bankr. D. Colo. 1996) ("The compensation to be

paid to an attorney can be deemed excessive [under § 329] for a host of

reasons, including but not limited to . . . failure to comply with the

disclosure requirements, the existence of conflicts of interest, and the

like.")

     5.    *Rule 2016(b) Disclosures*

The UST next contends that the fee disclosures Counsel filed in this

bankruptcy case were inadequate and contained false statements.  In

particular, the UST alleges that Counsel's initial Rule 2016(b) disclosure

was false, or at least incorrect, because it reported that Debtor agreed to

pay Counsel $1,607 total, with $107 paid prior to filing the statement.  Ex.

208.  This disclosure was amended by Counsel, but only after the UST's

motion was filed.  Even so, in the amended version, Counsel incorrectly

certifies that Debtor paid $307 to Counsel pre-petition, with $1,300

remaining to be paid post-petition.  Ex. 211.  In contrast, the evidence

presented at the hearing shows Debtor actually paid Counsel $500 pre-

petition, in two payments of $250 each.  This amount included sums

MEMORANDUM OF DECISION – 31

attributable to attorneys fees, a portion of the case filing fees,[16] and credit

counseling and credit report fees.  However, when Sorensen was

questioned about this at the hearing, he was unable to allocate, from the

payments received from Debtor, amounts paid for fees and other charges.

Based upon this record, the Court concludes that both Counsel's

original and amended disclosure statements contain incorrect

information.[17]  The evidence shows that Debtor paid Counsel $500 before

the petition was filed, and that the total amount of the fees was to be

$2,000.  Filing an inaccurate Rule 2016(b) disclosure statement is

---

[16]  As noted above, it appears that Counsel actually paid the initial $200
installment on Debtor's filing fee on September 23, 2016.

[17]  But it gets worse!  Counsel filed yet another amended Rule 2016(b)
disclosure on March 31, 2017, after the evidentiary hearing.  In this statement
Counsel certifies that it agreed to accept a total of $1,607, and that prior to the
filing of the statement, Counsel received a total of $242 from Debtor.  The Court
is perplexed by these statements since they are so completely inconsistent with
the evidence adduced at the hearing: that Debtor paid Counsel $500 cash prior to
bankruptcy; and that the total amount to be paid by Debtor to Counsel  was to be
$2,000, which included certain costs associated with the case, such as the filing
fee, credit report, and credit counseling costs.  In other words, as of the date of
this decision, and without further explanation, the information in Counsel's Rule
2016(b) continues to be just plain wrong.  Counsel is hereby admonished:  it must
file an accurate disclosure in this case – and in any other case it has appeared, for
that matter – or risk further attention from the Court.

MEMORANDUM OF DECISION – 32

appropriate basis for the total disallowance of compensation by Counsel.

*Law Offices of Nicholas A. Franke v. Tiffany (In re Lewis)*, 113 F.3d 1040, 1045-

46 (9th Cir. 1997); *In re Park-Helena Corp.*, 63 F.3 877, 881-82 (9th Cir. 1995);

*Hale v. United States Trustee (In re Basham)*, 208 B.R. 926, 930-31 (9th Cir.

BAP 1997); *In re Olson*, 2016 WL 3453341 at *9 (Bankr. D. Idaho June 16,

2016).

　　　6.　　*Violation of the Court's Installment Fee Payment Order*

Counsel drafted and filed an application by Debtor to pay the case

filing fee in installments along with her petition.  Ex. 203.  Just above the

line where Counsel and Debtor signed this application, it warns that "You

must pay your entire filing fee before you make any more payments or

transfer any more property to an attorney, bankruptcy petition preparer,

or anyone else for services in connection with your bankruptcy case."

Moreover, when the Court granted Debtor's application to pay the filing

fee in installments, it reinforced this requirement by including the

following language in its order: "until the filing fee is paid in full, the

Debtor(s) shall not pay any money or transfer any property to his attorney

MEMORANDUM OF DECISION – 33

and his attorney shall not accept any money or property from the

Debtor(s) for services in connection with this case." Ex. 205. This

prohibition is a standard feature for all such orders entered by the Court,

and conforms with the requirements of Rule 1006(b)(3): "[a]ll installments

of the filing fee must be paid in full before the debtor or chapter 13 trustee

may make further payments to an attorney or any other person who

renders services to the debtor in connection with the case.")

It is unclear to the Court whether Debtor ever paid any more fees to

Counsel after bankruptcy and before the last installment on the filing fee

was paid by Debtor on December 16, 2017. However, it is crystal clear

that, under the Agreement, fee payments were due from Debtor to

Counsel, and that Counsel attempted to collect those fees from Debtor,

prior to payment of the final filing fee installment.[18] The record shows that

Counsel's emails regarding her bill were sent to Debtor on September 15,

---

[18] Apparently, Counsel intended to use Debtor's post-petition payments as the source for Counsel to pay the remaining installment due on the filing fee. Of course, this arrangement violates the prohibition in the Rules and the Court's order. As it turned out, Debtor paid the final fee installment directly to the Clerk.

MEMORANDUM OF DECISION – 34

19, and 21, as well as October 18 and 25, and a letter was sent on

September 17.  Ex. 213.  Whether effective or not, Counsel's attempt to

collect fees from Debtor prior to payment of the full amount of the filing

fee in violation of the Court's order is condemnable and serves as a further

basis for the Court to order that Counsel disgorge all fees received and that

the Agreement be cancelled.

      *7.*    *Failure to Obtain Debtor's "Wet" Signatures on Court Filings*

      Counsel's conduct circumvented another local rule, L.B.R. 5003.1(e),

which provides that:

> The original of all conventionally signed documents that are
> electronically filed shall be retained by the filing party for a
> period of not less than the maximum allowed time to
> complete any appellate process, or the time the case of which
> the document is a part, is closed, whichever is later.  The
> document shall be produced upon an order of the court.

      While testifying at the hearing, Sorensen admitted that Counsel

never obtained Debtor's original, "wet" signature on many of the filings

made in her bankruptcy case containing her electronic signature.  Instead,

Sorensen testified that Counsel used software called "Adobe EchoSign" to

MEMORANDUM OF DECISION – 35

generate an electronic representation of Debtor's signature.  This technique

appears to have been used on the petition, application to pay the filing fee

in installments, declaration of schedules and statement of financial affairs,

statement of intention, and verification of the creditor matrix.  *See* Exs. 202,

204, and 209.

Counsel's use of software-generated signatures not only fell short of

compliance with the Local Rules, it amounted to a misrepresentation to the

Court because:

> when an attorney submits an electronically signed document
> to the Court, "he is certifying to the court that he has the
> [document] in his physical possession bearing the original
> signature of the [party].  If the certification is false, the
> attorney is subject to sanctions pursuant to Rule 9011."

*In re Daw*, 2011 WL 231362 at *6 (Bankr. D. Idaho January 24, 2011)

(quoting *in re Tran*, 427 B.R. 805, 808 (Bankr. N.D. Cal. 2010)).  A computer-

generated signature is not an "original" signature of the debtor.  *See, e.g.,*

*In re Mayfield*, 2016 WL 3958982 at *3 (Bankr E.D. Cal. July 15, 2016) ("The

court finds that a DocuSign affixation is a software-generated electronic

signature, as distinguished in the local rule from an originally signed

MEMORANDUM OF DECISION – 36

document.  Although DocuSign affixations and other software-generated

electronic signatures may have a place in certain commercial and other

transactions, they do not have a place as substitutes for wet signatures on a

bankruptcy petition, schedules, statements, and other documents filed

with the court, and they do not comply with this court's local rule.").

Sorensen assured the Court that Counsel has altered its office

practices to conform to the Code, Rules, and Local Rules, and that it now

religiously obtains wet signatures from its clients.  That it has mended its

wayward ways is creditable, but it does not help Counsel in this case, as

Debtor's wet signatures on several important filings were never obtained,

and based upon the docket, never filed with the Court.  While Counsel's

conduct could merit Rule 9011 sanctions, even without invoking that Rule,

the Court can confidently conclude that Counsel's failure to comply with

the original signature rules in this case diminished the value to Debtor of

its services.  *See In re Dean*, 2013 WL 3306418 at *5-6 (Bankr. E.D. Cal. June

28, 2013) (explaining that a motion to disgorge fees under § 329(b) would

be granted in part because debtors' counsel failed to obtain "wet

MEMORANDUM OF DECISION – 37

signatures" on the bankruptcy petition before filing it electronically; that

using the "/s/" was a false representation to the court which exposed the

debtors to the penalty of perjury, the risk of discharge litigation, and the

possibility of losing their discharge; and that this diminished the value of

debtors' counsel's services and supported disgorgement under § 329); *see*

*also In re Rich*, 2012 WL 8249563 at *7 (Bankr. E.D. Cal. Aug. 29, 2012)

(failing to obtain "wet signatures" is a proper grounds for disgorgement of

fees pursuant to § 329(b)).

Put another way, the value of a lawyer's services to a debtor is

reduced to nothing, or next to nothing, if those efforts include advising the

debtor to violate an order of the Court and a Local Rule.  In this case,

under § 329(b), the Court will cancel the Agreement and order a return of

the amounts paid to Counsel by Debtor.

///

### 8.    *At Bottom, It Was All About Leverage*

Based upon the facts, the Court must highlight one additional

concern about Counsel's tactics.  It must also note the inescapable irony

MEMORANDUM OF DECISION – 38

stemming from Counsel's conduct.

Counsel's intentions were transparent in this case. Its reliance on the terms of the Agreement it drafted, coupled with its willingness to aggressively pursue fee collection from Debtor while she was still attempting to obtain relief in the bankruptcy case, were parts of a strategy designed to leverage Counsel's position at a time when Debtor was most vulnerable to such tactics. In addition, Counsel's practice of initially filing just "bare bones" petitions, and filing other required documents only later, was plainly just another fee strategy, not something done to promote Debtor's interest or otherwise required by the facts of this case. By postponing the submission of most of the required documents, Counsel could then invoke the terms of the Agreement, threaten Debtor to withhold services and withdraw, and tell Debtor that, unless Counsel was paid as agreed, her bankruptcy case would be dismissed, and that she would have to "start over" to obtain debt relief. While, on occasion, filing an "emergency petition" is required by the circumstances, whatever justifications there may be for an incomplete filing, utilizing that practice

MEMORANDUM OF DECISION – 39

solely as a means to secure payment from Counsel's own client is

indefensible.

A cruel irony flows from this situation.  Long ago, Congress

laudably declared that honest, but unfortunate, debtors should not be

punished for their financial problems.  It carefully crafted the Code to give

such debtors a financial fresh start and relief from the burdens of their

debts.  But Counsel's use of the Agreement flies in the face of the noble

purposes of Code.  While Counsel promises to help its debtor-clients

secure their fresh start, if for some reason they cannot pay fees, the

Agreement prominently reserves Counsel's right to threaten to abandon

them in bankruptcy court under pain of dismissal of their bankruptcy

cases.[19]  Moreover, as indicated in Counsel's communications to Debtor,

absent timely payment, Counsel is apparently willing to pursue collection

from debtor-clients by referring their accounts for collection and

---

[19]  At the hearing, Sorensen assured the Court that Counsel had no
intention of following through on its threats of withdrawal and collection actions.
Assuming this is correct, Counsel's use of threats just to get paid was all the
more inappropriate.

MEMORANDUM OF DECISION – 40

garnishment of their wages, the precise sorts of creditor activities that

bankruptcy is intended to curb.  Here, Counsel's tactics potentially

threatened Debtor's ability to obtain a discharge, and the fresh start and

financial freedom it brings.  To take advantage of her in this way was

reprehensible.

### *Conclusion*

The UST has established facts adequate to justify the cancellation of

the Agreement and to require that Counsel disgorge all fees paid by

Debtor.  Based upon the evidence, the Court finds that Counsel engaged in

a variety of inappropriate conduct and actions.  Through the Agreement,

Counsel improperly attempted to unbundle its services and created

conflicts of interest with Debtor.  Counsel filed incorrect Rule 2016(b)

disclosure statements.  Counsel also violated the Court's rules requiring

original signatures on numerous documents it filed in this case, and

encouraged Debtor, through its collection activities, to violate the

conditions in the Court's installment fee payment order.

Though Counsel has represented that it is no longer attempting to

MEMORANDUM OF DECISION – 41

collect any further fees from Debtor, the Court will order that the

Agreement, and any obligation by Debtor to pay Counsel, be cancelled.

The Court will also order that Counsel promptly disgorge all sums paid to

it by Debtor for fees.

A separate order will be entered.

Dated:  June 5, 2017

_____
Honorable Jim D. Pappas
United States Bankruptcy Judge

MEMORANDUM OF DECISION – 42